FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2022 OCT 20  PM 4: 07

MARGARET BOTKINS, CLERK
CASPER

# UNITED STATES DISTRICT COURT
## DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br>v.<br><br>**CHRISTOPHER CHARLES BAKER,**<br>Defendant. | **CRIMINAL COMPLAINT**<br><br>Case Number: 22-MJ-56-J |

I, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief.

### COUNT ONE

Between on or about March 12 and 13, 2022, in the District of Wyoming, the Defendant, **CHRISTOPHER CHARLES BAKER**, possessed with intent to distribute, and did distribute, a mixture or substance containing a detectable amount of Fentanyl, a Schedule II controlled substance.

In violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).

I further state that I am a Special Agent with the Wyoming Division of Criminal Investigation, and that this complaint is based on the following facts:
*(See attached Sworn Statement)*

Continued on the attached sheet and made a part hereof.

Signature of Complainant
JON BRIGGS

Sworn to before me and subscribed by telephonic means,

October 20, 2022                    at        Lander, Wyoming
Date                                                     City and State

HON. TERESA M. MCKEE
United States Magistrate Judge
Name & Title of Judicial Officer                    Signature of Judicial Officer

**SWORN STATEMENT IN SUPPORT OF CRIMINAL COMPLAINT**
**SA JON BRIGGS**
**U.S. v. CHRISTOPHER CHARLES BAKER**

1. I am a Special Agent (SA) with the Wyoming Division of Criminal Investigation (DCI) and have so been employed since April 2020. I am a criminal investigator for the State of Wyoming and have worked as an investigator assigned to DCI since September 2017. As a Special Agent with DCI, I am defined as a police officer by Wyoming State Statute 9-1-601 (a) and 9-1-611 (b) (iv) and am currently assigned to the Southeast Enforcement Team (SEET). I am thus accorded the "power and authority of an Agent" as defined in Wyoming Statute 9-1-618 (b) (ii) and the "Division (and its Agents) shall investigate suspected violations of the Wyoming Controlled Substances Act of 1971, 35-7-1001 et seq., and (shall) perform all the duties of a law enforcement officer under this act." Prior to my employment for DCI, I was employed as a Wyoming State Trooper from August 2009, until being employed as a Special Agent with DCI in April 2020. During my employment as a State Trooper, I attended the Wyoming Law Enforcement Academy, and successfully completed that training academy to become a certified peace officer in the state of Wyoming. I am in fact still currently a certified police officer in the State of Wyoming. During my time as a police officer, I have attended several specialized trainings offered by both the Wyoming Division of Criminal Investigation and the Drug Enforcement Administration (DEA), including training with an emphasis on the investigation of state and federal laws, including those as outlined by the Controlled Substances Act, including but not limited to, 21 U.S.C. § 841(a)(1) (Possession and Distribution of Controlled Substances) and § 846 (Conspiracy) and specialized training in Title 18 U.S.C. 1956(a)(1) (drug-money laundering). I have received training in the identification of criminal

organizations engaged in conspiracies to manufacture and/or possess with the intent to distribute controlled substances, including marijuana, methamphetamine, cocaine, heroin, other controlled substances including both diverted and counterfeit pharmaceutical controlled substances, as well as training, experience, and conversations with other experienced agents and law enforcement personnel in the identification of methods employed by individuals engaged in narcotics manufacturing, transportation, use, and money laundering.

2. My duties as a Wyoming Division of Criminal Investigation Special Agent include the development and evaluation of information to detect criminal organizations engaged in the manufacture and/or distribution of controlled substances in the State of Wyoming, and the United States, as well as identification of the illegal proceeds of such illegal conduct and the laundering of those proceeds. As a DCI agent, I have participated in numerous controlled substance investigations, as well as controlled substance search warrants. I have been a surveillance agent observing and recording the movements of persons involved in the trafficking of controlled substances.

3. During my involvement in drug investigations, I have taken numerous roles, including working as a case Agent, directing investigations, as assisting or secondary case agent, working in an undercover capacity during controlled purchases, using criminal informants, and conducting interviews of both drug users and distributors. These investigations have included the investigation of conspiracies to distribute controlled substances, wire intercepts, historical investigations, as well as controlled purchases of controlled substances from distributors.

4. To successfully conduct these investigations, I have utilized a variety of investigative

techniques and resources, including physical and electronic surveillance. Through experience gained in these investigations, my training, and conversations with other more experienced agents and law enforcement personnel, I have become familiar with methods used by traffickers to smuggle, safeguard, and distribute narcotics, to collect and launder related narcotics proceeds, and to communicate about drug activity.

5.  Based on my training and experiences and my participation in this investigation and other controlled substance investigations, I have reason to believe that controlled substance users and distributors often possess, conceal, and distribute controlled substances in the furtherance of gaining proceeds, such proceeds would include both monetary and physical goods which result in them being considered the "profits" of such transactions. I know that in correctional institutions, due to the restriction of currency being utilized inside a facility, personal belongings such as food, and additional clothing often take the place of traditional currency as it would be utilized in public outside of detention facilities. Based on the following events, I have reason to believe Christopher Charles BAKER was a drug courier, transporting controlled substances, with the intent to redistribute them, and in fact did distribute controlled substances in the Albany County Detention Center (ACDC) 420 E. Ivinson Avenue, Laramie, Albany County, WY.

6.  Unless otherwise indicated, all events described herein occurred in Albany County, Wyoming. Specifically, the Albany County Detention Center (ACDC) 420 E Ivinson Avenue, Laramie, Albany County, Wyoming

7.  My knowledge of the matters contained in this affidavit is based upon my personal knowledge, involvement in the investigation, as well as information gathered from other police, and medical personnel, as well as their reports. This affidavit does not include all

the facts known to me regarding this investigation, only those sufficient to establish probable cause to believe the Defendant violated United States Federal Law specifically as they relate to 21 U.S. Code §§ 841(a)(1) and (b)(1)(C).

8.  On March 11, 2022, Albany County Sheriff's Office (ACSO) Deputies located a suspicious vehicle in Albany County, Wyoming, specifically in the area of 600 South Hayes space 17, Laramie, Albany County, WY. Deputies eventually determined the vehicle, a 2000 Ford, Super Duty, displaying a Colorado plate, which was registered to a 2015 Ford F-150, was in fact a stolen vehicle, and displaying incorrect license plates.

9.  During the investigation of the suspected stolen vehicle, Sergeant McKinney, from ACSO observed Christopher BAKER (YOB 1979) sticking his head out a window of the trailer house located at 600 South Hayes space 17, Laramie, Albany County, WY. Deputies ran BAKER's information through their police dispatch center and discovered that BAKER did have a valid warrant for his arrest out of Albany County, WY. After Deputies were at the trailer for a "short time", BAKER exited the trailer and met with deputies as requested to do so by police. BAKER approached deputies and acknowledged that he had a warrant for his arrest.

10. While in contact with Deputies, BAKER advised that the 2000 Ford super duty pickup was not stolen, and he believed it belonged to "his friend" Kevin Jacobsen. BAKER was placed under arrest for his warrant and transported to the Albany County Detention Center (ACDC), where he was served with the warrant.

11. Deputies remained at space 17 and searched the contents of the Ford pickup prior to it being towed. During the search of the Ford deputies located two blue pills wrapped in foil, which they believed to be counterfeit OxyContin, commonly containing fentanyl, a

Schedule II controlled substance. Deputies seized the pills as well as other miscellaneous items from the Ford. Deputies maintained custody of the items seized from the stolen Ford.

12. On March 12, 2022, Agents from the Wyoming Division of Criminal Investigation (DCI), were contacted by the Wyoming Highway Patrol Dispatch Center, and requested to contact ACSO jail personnel regarding an inmate that died while in the custody of ACSO. Agents responded to ACDC, and conducted an investigation related to the death of inmate Robert Ridinger, who was housed in "E" Pod, prior to his transport, and eventual death.

13. DCI agents conducted a search of "E" pod where Ridinger had been previously held and conducted interviews with several inmates housed in "E" Pod. One of the inmates assigned to the pod was Christopher BAKER, who had been transferred into E pod from the booking area on March 12, 2022.

14. On March 13, 2022, I, was contacted by ACSO Lt. Beeston and advised another inmate, Joshua Nichols, was believed to have experienced an overdose in "E" Pod on that date.

15. On March 13, 2022 agents interviewed Joshua Nichols, another inmate housed in the ACDC "E" pod. Nichols said someone in E pod had given him a pill and eventually admitted, "Yeah, it was Chris Baker." Nichols said that BAKER claimed to have eaten ten pills overnight. Nichols thought that BAKER had brought approximately fifteen pills into E pod. BAKER did not tell Nichols that he gave pills to Ridinger. Nichols told Baker not to give any pills to anyone else because he did not want anyone else to use and Nichols was trying to get "them" on the right path. Nichols said BAKER gave him a half pill. BAKER bit the pill in half and ate the other half of the pill. Nichols didn't think anyone saw him snort the pill. Nichols didn't ask BAKER how he got the pills into the jail. BAKER told Nichols that he was going to keep the rest of the pills because he did not want to get sick, understood to

mean go through withdrawals.

16. On March 13, 2022, DCI agents conducted a custodial interview of BAKER at ACDC after advising him of his Constitutional rights pursuant to the *Miranda* decision. During the interview BAKER advised Agents the other inmate assigned to cell #1, "E" Pod with BAKER, Nathan KALLEVIG was in possession of a suspected controlled substance, which he believed to be concealed in KALLEVIG's anus.

17. DCI agents interviewed KALLEVIG and told him of the allegation of him being in possession of the controlled substance. KALLEVIG advised agents he was in fact concealing a pill in his anus. KALLEVIG claimed the pill was given to him by BAKER, and he was told that he would conceal the contraband, at the demand of BAKER. KALLEVIG advised Agents that BAKER provided him the pill, and implied that there would be retaliation for KALLEVIG not concealing the pill inside his body cavity. KALLEVIG claimed BAKER alluded to his affiliation with criminal organizations, specifically white supremacist prison gangs when he attempted to convince KALLEVIG to conceal the pill. KALLEVIG believed BAKER was implying that he would be physically harmed for not doing as BAKER commanded him to do.

18. KALLEVIG provided the crushed pill to agents, which was in fact concealed in his body cavity, as described by BAKER. I collected the item from KALLEVIG and maintained custody of the pill for submission to the Wyoming State Crime Laboratory (WSCL).

19. In July 2022, I received a copy of a lab report from Forensic Science Consultants (FSC), which indicated the pill removed from KALLEVIG's anus, was in fact eight one-hundredths of a gram (0.08g) of Fentanyl, a Schedule II controlled substance.

**END OF SWORN STATEMENT**

Jon Briggs
Special Agent, Division of Criminal Investigation

Sworn and subscribed before me this __20th__ day of October, 2022.

TERESA M. MCKEE
UNITED STATES MAGISTRATE JUDGE

8

## PENALTY SUMMARY

**DEFENDANT NAME:**       **CHRISTOPHER CHARLES BAKER**

**DATE:**                 October 20, 2022

**INTERPRETER NEEDED:**   No

**VICTIM(S):**            No

**OFFENSE/PENALTIES:**

Ct: 1   **21 U.S.C. §§  841(a)(1), (b)(1)(C)**
(Distribution of Fentanyl)

0-30 Years Imprisonment
Up To $250,000 Fine
6 Years Supervised Release
$100 Special Assessment

**TOTALS:**   **0-30 Years Imprisonment**
**Up To $250,000 Fine**
**6 Years Supervised Release**
**$100 Special Assessment**

**AGENT:**                Jon Briggs, DCI

**AUSA:**                 Kerry J. Jacobson, Assistant United States Attorney

**ESTIMATED TIME OF**
**TRIAL:**                2 to 4 days

**WILL THE GOVERNMENT**
**SEEK DETENTION IN THIS**
**CASE:**                 Yes

**ARE THERE DETAINERS**
**FROM OTHER**
**JURISDICTIONS:**        No

1