Kerry J. Jacobson
Wyoming State Bar #6-2966
Assistant United States Attorney
District of Wyoming
P.O. Box 449
Lander, WY 82520
(307) 332-8195
kerry.jacobson@usdoj.gov

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| Plaintiff, | ) ) ) |
| v. | )   **Criminal No. 23-CR-31-J** |
| **CHRISTOPHER CHARLES BAKER,** | ) ) ) |
| Defendant. | ) |

## GOVERNMENT'S NOTICE OF INTENT AND MEMORANDUM IN SUPPORT OF THE ADMISSION OF DETENTION CENTER BODY CAMERA FOOTAGE, CRIME SCENE PHOTOS AND PHOTO OF VICTIM R.R. PRIOR TO HIS DEATH

The United States submits its notice of intent and memorandum in support of the admission of body camera footage and screenshots, crime scene photos, and a photo of victim R.R. prior to his death. In support of this, the United States informs the Court as follows:

*Background*

The Defendant has been charged with one count of distribution of fentanyl resulting in death (Count One), one count of distribution of fentanyl resulting in serious bodily injury (Count Two) and one count of distribution of fentanyl (Count Three). The charges are based upon evidence which shows that on March 11, 2022, the Defendant was able to smuggle fentanyl pills into the Albany County Detention Center and thereafter distributed them to R.R., J.N. and N.K. Of these

three individuals, R.R. overdosed and passed away due to fentanyl intoxication on March 12, 2022; J.N. suffered an overdose but was resuscitated on March 13, 2022; and, N.K. who, when questioned by law enforcement, admitted he had hidden the remaining fentanyl in his rectum when directed to do so by the Defendant. The remaining fentanyl was recovered from N.K.

When the overdoses of R.R. and J.N. occurred, detention officers and law enforcement responded and were wearing body cameras. After the R.R.'s collapse and death, photographs of the "E pod" were taken. The body camera videos depict the scene upon arrival by law enforcement, the efforts made to resuscitate R.R. and J.N. and the aftermath of each incident. The camera footage and photos will allow the jury to have a complete visual picture of events, assist in corroborating witness accounts, and help establish the overall timeline of events. At trial, the United States will move to admit clips from the body cameras and photographs, as well as one photograph of R.R. prior to his death.

### *Crime Scene Body Camera Footage and Photos*

The United States anticipates the Defendant may object to the admission of the body camera footage and crime scene photographs depicting the condition of R.R. and J.N., claiming such items are unduly prejudicial. However, the body camera footage and photographs are, and will be, directly relevant and probative to proving the elements of the charged offenses. Specifically: 1) they will depict the scene, which is not unduly or designedly inflammatory; 2) will depict the method and manner, as well as the nature, extent and seriousness, of the injury suffered by R.R. and J.N.; 3) will depict how and where R.R. and J.N. were located when found by detention officials; 4) will substantially aid in illustrating the testimony of the witnesses and provide corroboration of their testimony; 5) will depict the state of R.R.'s cell and clothing during rescue efforts and afterwards; and 6) will be probative, of the "serious bodily injury" suffered by J.N. and

cause of death of R.R. and the actions of the Defendant during times relevant to the charged offenses. All of which are probative of the Defendant's knowledge, intent, and state of mind.

It is well recognized that the "admission of photos in a homicide case is a matter within the sound discretion of the trial court" and the trial court's decision will not be disturbed absent a clear showing of abuse of discretion. *United States v. Soundingsides*, 820 F.2d 1232, 242-43 (10th Cir. 1987) (*citations omitted*). Although "[t]he risk that introducing graphic evidence of brutal murders will give rise to emotional reactions poses a legitimate risk of unfair prejudice … the vicious, brutal nature of a defendant's conduct is not itself sufficient to justify a complete exclusion of evidence tending to show the defendant engaged in those acts." *United States v. Oldman,* 979 F.3d 1234, 1251 (10th Cir. 2020), *citing, United States v. Lujan,* 603 F.3d 850, 858 (10th Cir. 2010). "Gruesomeness alone does not make photographs inadmissible." *United States v. Naranjo*, 710 F.2d 1465, 1468 (10th Cir. 1983). It is recognized that such photographs, which show the "corpus delicti" of the crime, and which show the particulars of the crime scene and injuries, are admissible. *See generally Naranjo*, at 1468-69 ("In our court system, juries are entrusted with the weighty obligation to find the facts in criminal cases of grave importance, such as the one before us. We think it is incompatible with that degree of trust to attempt to 'protect' them from the evidence questioned here. It was part of the surroundings of the crime scene. The photograph was not unduly nor designedly inflammatory.")

In balancing the prejudicial effects of the videos and photographs against their probative value, it must be remembered that in any criminal proceeding, relevant evidence will always be prejudicial. It is only *unfair* prejudice, which *substantially* outweighs the probative value which can be excluded. *Id.* at 1469.  More specifically:

> Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant

matter under Rule 403. Unless trials are to be conducted on scenarios, on unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing. Its major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect. As to such, Rule 403 is meant to relax the iron rule of relevance, to permit the trial judge to preserve the fairness of the proceedings by exclusion despite its relevance. It is not designed to permit the court to "even out" the weight of the evidence, to mitigate a crime, or to make a contest where there is little or none. Here was no parade of horrors. We refuse to interfere with the trial court's exercise of its discretion.

*Id.* at 1469 (emphasis in original)(*citing United States v. McRae*, 593 F.2d 700, 707 (5th Cir. 1979).

The photographs and body camera footage depicting the circumstances of R.R. and J.N.'s fentanyl overdoses, the rescue efforts and the aftermath are certainly unpalatable. However, they are not deliberately or flagrantly so, and their admission is not unfair. The evidence is probative for all the reasons listed previously and more particularly the camera footage and photographs:

*Depict the area surrounding the crime scene, which is not unduly or designedly inflammatory:*

The photos and body camera footage represent the scene, including R.R. and J.N., as seen by officials when they arrived, which the government alleges is what the Defendant caused by distributing fentanyl to them. Law enforcement did not stage anything, the camera footage and pictures depict what the officers were confronted with when they arrived and their efforts to rescue both men. Given the nature of these incidents, it goes without saying the evidence is unpleasant to view. However, the camera footage and photos accurately depict what law enforcement observed upon their arrival.

*The camera footage and photos depict the nature and extent of the fatal overdose by R.R. and the overdose of J.N.:*

As noted above, the camera footage and photos depict the scene as viewed by detention officials, law enforcement and medical personnel when they arrived. The camera footage and

photos depict R.R. both during and after his fatal overdose; J.N. during and after his overdose; and, the efforts made to save both individuals. R.R. was given CPR manually and mechanically, however, despite best efforts, R.R. was unable to be revived. When R.R. suffered his fatal overdose, he fell to the cement floor and hit his face. That, coupled with attempts to place a breathing tube, caused R.R. to bleed which in turn caused the mistaken impression by some that he may have been assaulted. J.N. was discovered unresponsive on the floor of his cell and was also given CPR both manually and mechanically. J.N. was eventually revived due to the administration of Narcan and taken to the hospital. The body camera footage depicts the actions taken by the witnesses and will be one of the focal points of their testimony at trial. Accordingly, the body camera footage is critical, not only to show the trier of fact the actual results of the Defendant's conduct but will be illustrative of the witnesses' testimony. The body camera footage further provides visual proof as to determination as to whether J.N. suffered serious bodily injury as charged in the indictment.

*Body Camera footage will be a substantial aid in illustrating the testimony of the toxicologist*:

Dr. Darracq will testify as to the extent and nature of fentanyl overdoses, fatal and otherwise. Dr. Darracq will discuss treatment of such overdoses and how the fentanyl involved in this case specifically affected R.R. and J.N. The body camera footage will be helpful to the jury as a reference point during Dr. Darracq's testimony.

For all of the above reasons, body camera footage and photos of the overdoses of R.R. and J.N. are admissible. The probative value of this evidence outweighs any prejudice. The United States will offer carefully curated footage and a limited number of photos, and therefore will limit any unnecessary exposure to such by the trier of fact.

*Photograph of R.R. prior to his death*

At the trial of this matter, the United States intends to admit a photograph of R.R., prior to his death. The purpose in admitting this single photograph is to identify the victim R.R. Obviously the United States cannot bring R.R. to trial. The United States will use a photograph that was taken at a time reasonably close in time to the alleged offense. The admission of such a photograph is acceptable under Tenth Circuit precedent. *See United States v. Pettigrew*, 468 F.3d 626, 638 (10th Cir. 2006)("A photograph of a victim while living is admissible to prove the identity of the victim.").

**DATED** this 26th day of September 2023.

            Respectfully submitted,

            NICHOLAS VASSALLO
            United States Attorney

By: */s/ Kerry J. Jacobson*
   KERRY J. JACOBSON
   Assistant United States Attorney

**CERTIFICATE OF SERVICE**

This is to certify that on the 26th day of September 2023, I served a true and correct copy of the foregoing upon counsel of record for the Defendant by electronic filing.

            */s/Mikala Dawson*
            UNITED STATES ATTORNEY'S OFFICE